LONG, Presiding Judge.
In May 1993, the appellant, William. T. Ingram, was convicted of manslaughter and assault in the third degree, in connection with an alcohol-related automobile accident that resulted in the death of Elizabeth Beaird and that injured her husband Arthur. The appellant was sentenced on July 6,1993, to 20 years in the penitentiary for the manslaughter conviction and to 1 year in the county jail for the assault conviction. The sentences were to be served consecutively. The appellant did not file a notice of appeal.
At trial, the state presented evidence that the automobile being driven by the appellant veered into the lane of oncoming traffic on a two-lane highway and collided head-on with the Beairds’ vehicle. Elizabeth Beaird was killed instantly. Arthur Beaird was hospitalized with injuries to his arm and leg. The appellant was also injured in the collision and was transported by ambulance to a hospital, where hospital personnel took a blood sample. An analysis of that blood revealed that the appellant’s blood-alcohol concentration was 0.228%.
*1038 In March 1994, the appellant filed a Rule 32, Ala.R.Crim.P., petition, alleging, among other things, that his failure to file a direct appeal was without fault on his part. See Rule 32.1(f), Ala.R.Crim.P. The trial court granted the appellant an out-of-time appeal on May 19, 1994. The appellant filed his notice of appeal on June 2,1994, and the trial court appointed new counsel to represent him in further proceedings. The appellant’s appointed attorney filed a motion, pursuant to Ex parte Jackson, 598 So.2d 895 (Ala.1992), to toll the running of the time for filing a motion for a new trial. The trial court entered an order granting the “Jackson motion,” and the appellant subsequently filed a motion for a new trial that alleged, among other things, that he had been denied the right to effective assistance of trial counsel. Following a hearing, the trial court denied the appellant’s motion for a new trial. The appellant’s out-of-time appeal then proceeded to this court.
In an unpublished memorandum issued on August 18, 1995, this court affirmed the appellant’s convictions, holding, among other things, that the jurisdictional time limit for filing a motion for a new trial had already expired when the appellant’s newly appointed counsel filed the Jackson motion, that the appellant’s motion for a new trial was thus untimely, and that his claim of ineffective assistance of trial counsel in that motion was proeedurally barred.
The Alabama Supreme Court, in Ex parte Ingram, 675 So.2d 863, 864 (Ala.1996), granted the appellant’s petition for certiorari review “to consider the single issue whether the Court of Criminal Appeals correctly held that his claim of ineffective assistance of counsel was proeedurally barred.” The Supreme Court went on to overrule Ex parte Jackson, to the extent that it “allow[ed] a defendant’s newly appointed appellate counsel to move to suspend the Rule 24.1(b), Ala.R.Crim.P., 30-day jurisdictional time limit for new trial motions.” The Supreme Court further held that the appellant should be allowed to present his ineffective assistance of counsel claim in a second Rule 32 petition, “because the peculiar facts of this case satisfy the Rule 32.2(b), Ala.R.Crim.P., requirement of ‘good cause’ for being allowed to present successive Rule 32 petitions.” 675 So.2d at 866.
On or about April 11, 1996, the appellant filed his second Rule 32 petition in the trial court, presenting therein various allegations of ineffective assistance of trial counsel and again alleging that the failure to file a direct appeal was without fault on his part. In an order dated September 20, 1996, the trial court ruled that the appellant’s claim of ineffective assistance of counsel was without merit. However, .the trial court again granted the appellant an out-of-time appeal, even though it specifically noted that it had previously granted such relief in May 1994. On October 9, 1996, the trial court granted the appellant’s motion for an appeal bond, setting his bond at $80,000. This appeal ensued.
I.
The state correctly argues that the trial court was without authority to grant the appellant a second out-of-time appeal and that this case is properly before us only as an appeal from the trial court’s denial of the appellant’s second Rule 32 petition and, specifically, from the trial court’s denial of the appellant’s claim in that petition that his trial counsel had rendered ineffective assistance. There is no right to two direct appeals from the same conviction. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). We have stated that “a criminal defendant is guaranteed one appeal from his conviction, and that appeal is to this court.” State v. Tarver, 629 So.2d 14,18 (Ala.Cr.App.1993). Therefore, the appellant’s second out-of-time appeal is due to be dismissed.
The state has also correctly argued that the trial court was without authority to grant the appellant’s motion for an appeal bond. Rule 32.10(b), Ala.R.Crim.P., provides that a Rule 32 petitioner shall not be released on bond pending an appeal by either party. Thus, the appellant’s appeal bond is hereby revoked.
II.
The appellant claimed in his Rule 32 petition that his trial counsel had rendered inef- *1039 feetive assistance. In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
“First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”
466 U.S. at 687, 104 S.Ct. at 2064.
As the Supreme Court stated in Strickland:
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
“Even if an attorney’s performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.”
Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App.1994), cert. denied, 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1995).
The appellant first argues that his trial counsel was ineffective for failing to argue that the appellant was unlawfully arrested without a warrant for the misdemean- or offense of driving under the influence of alcohol. The appellant maintained that the offense was not committed in the arresting officer’s presence and that, therefore, his arrest after he was transported to the hospital was not lawful under § 32-5-171, Ala.Code 1975. Section 32-5-171 states:
“A uniformed police officer, state trooper, county sheriff or his deputy or member of a municipal police force may arrest, at the scene of a traffic accident, any driver of a vehicle involved in the accident if upon personal investigation, including information from eyewitnesses, the officer has reasonable grounds to believe that the person by violating section 32-5A-191 contributed to the accident. He may arrest such a person without a warrant although he did not personally see the violation.”
Section 32-5A-191, Ala.Code 1975, defines the offense of driving under the influence of alcohol.
Alabama State Trooper W.G. Jones testified at trial that at about 10:30 p.m. on November 14,1992, he was dispatched to the scene of an automobile accident on Alabama Highway 14. When he arrived at the scene, Trooper Jones found that there had been a two-vehicle collision involving the appellant’s *1040 ear and a car driven by Arthur Beaird, whose wife Elizabeth was a passenger in the car. The appellant’s car was in the eastbound lane of the highway, with steam and smoke coming from it. The Beairds’ car was turned on its side at the edge of the road. Trooper Jones, who was the first officer on the scene, approached the appellant’s car, and found the appéllant slouched in the driver’s seat. Before Trooper Jones could ask the appellant about the extent of his injuries, the appellant told him that he had to “get out of here.” Trooper Jones testified that he smelled the strong odor of an alcoholic beverage at this time. However, he stated that he was uncertain whether the odor was coming from the appellant or from the inside of the appellant’s car. Fearing a fire hazard, Trooper Jones retrieved a fire extinguisher from his car and radioed for ambulances and a fire truck. He testified that he did not talk to the appellant further regarding any suspicions he may have had about the appellant’s consumption of alcohol, because “[t]here were a lot of other activities going on and I didn’t have a chance to really talk to him.” He stated that his main concern at the scene was to ensure that the appellant did not make his injuries more severe by moving.
At 10:45 p.m., shortly after Trooper Jones arrived at the scene, State Trooper Mary Sterling arrived. Trooper Sterling, who was the case agent for the accident, saw that Mrs. Beaird had been badly injured and that medical personnel were attending to her and her husband. After Trooper Jones informed her that he had spoken to Mr. Beaird, Trooper Sterling approached the appellant in his ear and asked him his name and whether there was someone he wanted her to contact. The appellant gave Trooper Sterling his home telephone number and asked her to telephone his wife. According to Trooper Sterling, the appellant spoke in a “rambling” manner and seemed “very excited” and began to tell her about “being in trouble.” Trooper Sterling testified that she smelled the strong odor of an alcoholic beverage on the appellant as he talked. She stated that she formed the opinion at that time that the appellant was under the influence of alcohol and that he was unable to safely operate a motor vehicle. She also stated that based on her conversations with Trooper Jones and other witnesses at the scene and the relative positions of the automobiles, it appeared to her that Mr. Beaird had made an evasive action in his vehicle in order to avoid being struck by the appellant’s car. Trooper Sterling testified that there was blood “all over” the appellant and she feared that his injuries might be serious. Because she believed the appellant might be seriously injured and that questioning him about his consumption of alcohol might unduly excite him, Trooper Sterling did not question the appellant further. She testified that her main concern at the scene was to obtain medical help for the appellant.
The appellant was placed in an ambulance and taken to the emergency room at the Central Alabama Medical Center. At the direction of Trooper Sterling, Trooper Jones followed the ambulance to the hospital in his car for the purpose of interviewing the appellant. After the ambulance arrived at the hospital, approximately 35 minutes after Trooper Jones had first arrived at the accident site, Trooper Jones accompanied the appellant and medical personnel into the emergency room. In the emergency room, Trooper Jones spoke to the appellant. He testified that at that point, he determined that there was the strong smell of alcohol on the appellant’s breath. Trooper Jones placed the appellant under arrest for driving under the influence of alcohol, advised him of his Miranda rights, and requested that Michael Schmitt, a medical technician at the hospital, take a blood sample from the appellant. Schmitt took the blood sample, and a subsequent analysis revealed that the appellant’s blood-alcohol concentration was 0.228%.
On cross-examination, Trooper Jones stated that he arrested the appellant at the hospital and not at the roadside. He indicated that he did not believe there was probable cause for the appellant’s arrest until he spoke to him at the hospital.
Notwithstanding Trooper Jones’s statement concerning his subjective belief regarding probable cause for arrest, we are convinced, from the testimony of Trooper Jones *1041 and the testimony of Trooper Sterling, that probable caused existed at the roadside to place the appellant under arrest for the offense of driving under the influence of alcohol, and that only the exigencies caused by the officers’ need to control the accident scene and to care for the injured, including the appellant, prevented the appellant’s being arrested at the roadside. We do not believe that the legislature, in enacting § 32-5-171, intended that an intoxicated driver contributing to an automobile accident could avoid a warrantless arrest by leaving the accident scene, under circumstances such as these, before an officer has made a formal declaration of arrest or before the officer’s investigation has fully developed grounds for an arrest, especially where, as here, the reason for the person’s departure from the scene is to seek medical treatment. There is nothing in the record indicating unnecessary delay in the appellant’s arrest or that the appellant’s arrest was not made with reasonable promptness, given the circumstances. See State v. Calanche, 91 N.M. 390, 393, 574 P.2d 1018, 1020 (App.1978) (stating that when an officer arrives at an accident scene, the officer has two immediate concerns: care for the injured and traffic safety, and stating further, “only after action is underway to meet these immediate concerns can the officer undertake to investigate the accident. Yet, it is this investigation that provides the grounds for a warrantless arrest” under the statute.). Moreover, we believe that, under the facts of this case, the hospital emergency room could be considered an extension of the “scene of the accident.” See Morrow v. State, 303 A.2d 633 (Del.1973). Accordingly, we find that the appellant’s warrantless arrest was valid under § 32-5-171. Because his arrest was valid, his counsel was not ineffective for failing to challenge that arrest. The appellant has failed to satisfy Strickland ’s test for prevailing on a claim of ineffective assistance of counsel as to this issue.
The appellant next argues that his trial counsel was ineffective for failing to argue that evidence that he says was obtained as the result of an un-Mirandized statement made by the appellant at the hospital be suppressed by the trial court. The statement was in fact suppressed by the trial court. The appellant, however, does not point to any evidence obtained or admitted as a result of the un-Mirandized statement. Therefore, he has not shown how he was prejudiced by his counsel’s actions. The appellant has failed to satisfy Strickland’s test for prevailing on a claim of ineffective assistance of counsel as to this issue.
Finally, the appellant argues that his trial counsel was ineffective for failing to challenge the blood-alcohol test results on the ground that the person who drew the blood from him at the hospital lacked the qualifications to do so. Michael Schmitt, who drew the blood sample from the appellant, testified at trial that he was a medical laboratory technician at the Central Alabama Medical Center, that he had earned an associate’s degree in medical technology, that he was licensed by the State of Tennessee as a medical technologist, and that he had approximately six years’ experience in the field. Schmitt’s testimony was sufficient to establish that he was a “qualified person” within' the meaning of § 32-5A-194(a)(2), Ala.Code 1975, to withdraw the appellant’s blood for the purpose of having it tested for its alcohol content. See Powell v. State, 515 So.2d 140 (Ala.Cr.App.1986). The appellant has offered no evidence to establish that Schmitt was not qualified under Alabama law to take the appellant’s blood sample and has failed to satisfy Strickland’s test for prevailing on a claim of ineffective assistance of counsel.
For the reasons set out above, we find that the trial court correctly denied the appellant relief on his allegations that his trial counsel rendered ineffective assistance. We therefore affirm the trial court’s denial of the appellant’s Rule 32 petition. Also, for the reasons set out above, we dismiss the appellant’s second out-of-time appeal, and we revoke the appellant’s appeal bond.
SECOND OUT-OF-TIME APPEAL DISMISSED; APPEAL BOND REVOKED; DENIAL OF RULE 32 PETITION AFFIRMED.
All the Judges concur.