917 So.2d 159 (2005)
Raymond Keith SCOTT
v.
STATE of Alabama.
CR-03-1202.
Court of Criminal Appeals of Alabama.
April 29, 2005.
Rehearing Denied June 17, 2005.
*162 T. Jefferson Deen III, Mobile, for appellant.
Troy King, atty. gen., and Nancy M. Kirby, deputy atty. gen., for appellee.
PER CURIAM.
Raymond Keith Scott entered Alford[1] "best interest" pleas of guilty to two charges of showing or allowing to be shown for entertainment purposes female genitals, pubic area, or buttocks with less than a fully opaque covering, or female breasts with less than a fully opaque covering of any portion thereof below the top of the nipple, violations of § 13A-12-200.11, Ala.Code 1975.[2] He was sentenced to five years' imprisonment for each conviction, to run concurrently; the sentences were split, and he was ordered to serve one year and one day in prison, followed by three years on supervised probation.[3]
Before entering his pleas, Scott expressly reserved the right to appeal the following issues: (1) whether the factual basis for the pleas was sufficient; (2) whether the trial court erred in denying his motion to dismiss the indictments against him on the ground of multiplicity; and (3) whether the trial court erred in denying his motion to declare § 13A-12-200.11 unconstitutionally vague.
Section 13A-12-200.11 provides:

*163 "It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state. A violation of this section shall be a Class C felony.
"If a person is held under this section in the county jail, one-half of any fines collected and due to be deposited to the State General Fund for violations of this section shall be paid by the Comptroller to the general fund of the county where the person is held for the operation of the county jail."
Scott was charged in two separate indictments as follows:
"The grand jury of said county charge that, before the finding of this indictment, Raymond Keith Scott, whose name is to the grand jury otherwise unknown than as stated, did on our about December 19, 2000, as a whole or part owner or manager or otherwise in control of the business establishment, X-Citing Tan, unlawfully show or allow to be shown for entertainment purposes the human male or female genitals and/or pubic area and/or buttocks with less than a fully opaque covering and/or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, in violation of Section 13A-12-200.11 of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C. 36.)
"The grand jury of said county charge that, before the finding of this indictment, Raymond Keith Scott, whose name is to the grand jury otherwise unknown than as stated, did on or about January 10, 2001, as whole or part owner or manager or otherwise in control of the business establishment, X-Citing Tan, unlawfully show or allow to be shown for entertainment purposes the human male or female genitals and/or pubic area and/or buttocks with less than a fully opaque covering and/or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, in violation of Section 13A-12-200.11 of *164 the Code of Alabama, against the peace and dignity of the State of Alabama."
(C. 37.)

I.
Scott contends that the State failed to present a sufficient factual basis to support his pleas of guilty.
Initially, we note that Scott's argument in this regard does not comply with Rule 28(a)(10), Ala.R.App.P., which requires that an argument contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Scott cites no relevant legal authority. "[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority." Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App.1991). See also Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App. 2002) (Rule 28(a)(10), Ala.R.App.P., "requires parties to include in their appellate briefs an argument section with citations to relevant legal authorities and to portions of the record relied on in their claims for relief."). Therefore, this issue is deemed to be waived.
However, even if this issue were properly before this Court for review, we would conclude that it is meritless. The prosecutor provided the following statement of facts underlying the charges:
"Raymond Keith Scott is listed as the owner on State revenue records for X-Citing Tans, located at 3698-B Airport Boulevard. Eric Langan is listed as the owner of X-Citing Tans on City revenue records.
"On December 19, 2000, Corporal Meynard went into the business identified as X-Citing Tans, located at 3698-B Airport Blvd. in an undercover status. Once inside the building, Corporal Meynard met with a white female subject identified as Trinity. This subject advised Corporal Meynard that he would have to pay a $40.00 room fee, $20.00 for her to get totally nude plus tip her. Corporal Meynard agreed to the price, paid her the $40.00 and was led into a separate room. Trinity left the room and told him to get comfortable, and, after approximately five minutes, she returned and told him the rules, that he could not touch her on her breast, vagina, or the crack of her behind. She turned on a portable CD player and started dancing in an erotic manner. While she was dancing, she stated that she could only get as comfortable as he did. Corporal Meynard unbuttoned his shirt and pants and she responded by exposing her breast and continued dancing until the time was up. She then asked for the $20.00, which he paid and left the business.
"On January 10, 2001, Corporal Meynard went in the listed business and met with another white female subject who identified herself as Alaine. This subject asked if Corporal Meynard wanted to get a session. He asked her how much a toy show would cost, and she responded $40.00 in addition to the $40.00 room fee and $20.00 nudity fee for a total of $100.00. He paid her $40.00 in the lobby and was led to a separate room where she began dancing and removed all her clothing. After dancing for awhile, she pulled a chair in *165 front of Corporal Meynard, sat down and took out a plastic sex toy in the shape of a male penis. The subject then began to masturbate in front of him using the sex toy until the time was up. Corporal Meynard paid her the additional $60.00 and left the business."
(R. 52-54.)[4]
Scott argues that because he was listed as the owner of the club only on State revenue records while another individual was listed as the owner on the revenue records of the City of Mobile and because there was no indication that he was actually involved in the management or supervision of X-Citing Tans, a reasonable inference could have been drawn that he was nothing more than "an absentee landlord." (Scott's brief at p. 17.) He also argues that the prosecutor's factual basis contained no mention of a culpable mental state and, thus, that it was insufficient to provide a basis for his convictions. Finally, with respect to the December 19, 2000, event, he argues that there was no showing that the dancer who exposed her breast did so in a manner that violated the statute as charged in the indictment, i.e., "with less than a fully opaque covering or any portion thereof below the top half of the nipple." (Scott's brief at p. 17.)
Rule 14.4(b), Ala.R.Crim.P., provides that "[n]otwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without being satisfied that there is a factual basis for the plea." "The purpose of requiring the trial judge to determine that there is a factual basis for the plea `is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense.'" Alderman v. State, 615 So.2d 640, 647 (Ala.Crim.App.1992), quoting United States v. Keiswetter, 860 F.2d 992, 995 (10th Cir.1988), remand order withdrawn and plea vacated on rehearing, 866 F.2d 1301 (10th Cir.1989) (en banc). "`The only factual basis required for a guilty plea is that which will satisfy the court that the appellant knows what he is pleading guilty to.'" Alderman, 615 So.2d at 647, quoting Garner v. State, 455 So.2d 939, 940 (Ala.Crim.App.1984). "`The factual basis [can be] established, in part, by the appellant's admission that he knew to what offense he was pleading guilty.'" Speigner v. State, 663 So.2d 1024, 1027 (Ala.Crim.App.1994), quoting Jones v. State, 492 So.2d 642, 645 n. 3 (Ala.Crim.App.1986). Likewise, "the reading of the indictment [is] sufficient to establish a factual basis for a guilty plea in certain cases, [and] in those cases it is not required that the indictment be read into the record during the guilty plea hearing." Alvis v. State, 740 So.2d 459, 461 (Ala.Crim.App. 1998).
It is clear from our review of the record that Scott was aware of the nature and elements of the charges against him and that he knew exactly what he was pleading guilty to. At arraignment, Scott waived the reading of the indictments and entered pleas of not guilty; thus, he was charged with knowledge of the contents of the indictments. See, e.g., Alexander v. State, 488 So.2d 41, 44 (Ala.Crim.App.1986) ("When a defendant waives the reading of an indictment at his arraignment, he is nonetheless charged with knowledge of its contents."). Both indictments alleged that Scott was "in control" of the club and that the performances underlying the charges included the dancers showing various body parts "with less than a fully opaque covering." *166 (C. 36-37.) When asked by the trial court during the guilty-plea colloquy whether he understood the charges against him, Scott answered in the affirmative. The prosecutor set forth a detailed factual statement of the conduct that formed the basis for the charges, and, as the State correctly points out in its brief to this Court, just before the guilty-plea colloquy, the trial court held an extensive hearing on Scott's motions challenging his indictments and challenging the constitutionality of § 13A-12-200.11, during which the facts underlying the charges were discussed. The allegations in the indictments, the prosecutor's statement of the conduct that formed the basis for the charges in the indictments, and the discussion of the facts of the crimes during the motion hearing were more than sufficient to establish a factual basis for Scott's pleas.
Moreover, Scott's argument, although couched in terms of the factual basis for the pleas, appears to also challenge the State's proof. However, it is well settled that "`[a] plea of guilty is an admission of whatever is sufficiently charged in the indictment. A voluntary guilty plea concludes the issue of guilt, dispenses with need for judicial fact finding, is conclusive as to the defendant's guilt, and is an admission of all facts sufficiently charged in the indictment.'" Whitman v. State, 903 So.2d 152, 155 (Ala.Crim.App.2004), quoting Morrow v. State, 426 So.2d 481, 484 (Ala.Crim.App.1982). Thus, by pleading guilty, Scott admitted to each and every element of the charged crimes and removed the State's burden of proving its case to the finder of fact.

II.
Scott contends that the trial court erred in denying his motion to dismiss one of the indictments against him on the ground of multiplicity, i.e., that he was charged with a single offense in two separate indictments.
In Evans v. State, 794 So.2d 415 (Ala.Crim.App.2000), this Court stated:
"The concept of multiplicity is discussed in 2 LaFave & Israel, Criminal Procedure, § 19.2(e) (1984):
"`A multiplicitous indictment charges a single offense in several counts. It is often the product of a prosecutor's mistaken assumption that a particular statute creates several separate offenses rather than a single crime that can be accomplished through multiple means. A multiplicity issue is also presented when a series of repeated acts are charged as separate crimes but the defendant claims they are part of a continuous transaction and therefore a single crime.'"
794 So.2d at 430. (Emphasis added.)
In Girard v. State, 883 So.2d 714 (Ala.Crim.App.2002), aff'd, 883 So.2d 717 (Ala. 2003), in addressing the simultaneous possession of multiple pieces of obscene material, this Court stated:
"This is not a case where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Rather, this is a case where Girard's conduct has yielded an indictment in which the possession of each file of obscene material has been charged as a separate crime under the same statute. The pertinent inquiry in deciding whether this is acceptable in the face of constitutional guarantees against double jeopardy then becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

*167 "`"A single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. Const. of 1901, Art. I, § 9; U.S. Const. Amend. V." Ex parte Darby, 516 So.2d 786, 787 (Ala.1987). Such question of double jeopardy is determined by the following principles:
"`"It has been aptly noted that `the Blockburger [v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] test is insufficient where ... the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction.' Rashad v. Burt, 108 F.3d 677 (6th Cir.1997). This is because when `a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied.' State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). The `appropriate inquiry' in such a case `asks what "unit of prosecution" was intended by the Legislature as the punishable act.... The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor.' Commonwealth v. Rabb, 431 Mass. 123, 725 N.E.2d 1036 (2000) (concluding that allegedly multiple drug possessions justify multiple charges if the possessions are sufficiently differentiated by time, place or intended purpose, the case here regarding defendant's possession of drugs at his residence for immediate sale and his possession of drugs at motel for future sales)."
"`4 Wayne R. LaFave et al., Criminal Procedure § 17.4(b), 2001 Pocket Part n. 66 (2d ed.1999). See also Project, "Twenty-Ninth Annual Review of Criminal Procedure," 88 Geo. L.J. 879, 1293 (2000) ("when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown").'
"Townsend v. State, 823 So.2d 717, 722 (Ala.Crim.App.2001) (footnote omitted)."
883 So.2d at 715-16.[5] In Townsend v. State, 823 So.2d 717 (Ala.Crim.App.2001), this Court recognized that the appropriate unit of prosecution would have to be determined on a case-by-case basis.
Here, although Scott was charged in separate indictments, rather than in multiple counts in a single indictment, the same question arises: Did Scott's conduct constitute more than one criminal act, allowing two charges of violating the statute, or did his conduct constitute one continuous criminal transaction, allowing only one charge of violating the statute? In other words, what is the correct unit of prosecution?
Scott notes that in Girard the Alabama Supreme Court upheld this Court's holding that Girard could be convicted of only one count of unlawful possession of obscene matter, even though he was in possession of multiple images. Scott further notes that in King v. State, 674 So.2d 1381 (Ala. *168 Crim.App.1995), this Court upheld King's seven convictions for the unlawful distribution of obscene material in violation of § 13A-12-200.2, stemming from two separate transactions involving the sale of seven videotapes. Scott argues that King is distinguishable from Girard:
"The Court distinguished Girard from King because matter was described in the plural while material was defined in the singular. The term entertainment purposes found in Section 200.11 is plural. If the rule of lenity is used in conjunction with the logic espoused by the Court in Girard the business establishment can only be convicted of the singular offense of allowing the prohibitive conduct to take place. The proper unit of prosecution under Section 13A-12-200.11 is the allowing of the prohibited conduct for entertainment purposes, regardless of how many times the prohibited conduct occurs."
(Scott's brief at p. 13-14.)
The record indicates that the State's theory of the case was that Scott, as one of the owners of X-Citing Tans, allowed performances in his business on two separate and distinct occasions that ran afoul of § 13A-12-200.11. The State correctly notes that those two incidents occurred nearly a month apart; that each performance was by a different female; and that each performance consisted of a different fee based on the specific acts to be performed. Thus, according to the State, the performances were uniquely differentiated by time, performer, and substance, so as to allow for a separate prosecution with regard to each performance as a unique and separate violation of the statute. The State adheres to this position on appeal.
After carefully reviewing § 13A-12-200.11, the record, and the briefs, we agree with the State and conclude that Scott's acquiescence in the activities of X-Citing Tans constituted a separate criminal act under § 13A-12-200.11 each time a proscribed "peep show" was performed on the premises for the undercover officer. Looking first to the language of the statute, § 13A-12-200.11 defines the unit of prosecution, in pertinent part, in terms of the act of allowing specific uncovered parts of the human male or female body to be shown to others as a form of entertainment. Although the first paragraph of § 13A-12-200.11 does not conclusively speak to the intended unit of prosecution, when that paragraph is read together with the second paragraph of § 13A-12-200.11 it appears that the legislature intended to punish each act of allowing a person or a group of persons, as the case may be, to view, for his, her, or their "entertainment pleasure," the uncovered parts of the human male or female body listed in the statute, i.e., the language of the statute seems to contemplate a separate and distinct violation each time a performance is allowed.
The second paragraph provides that "[i]f a person is held under this section in the county jail, one-half of any fines collected and due to be deposited to the State General Fund for violations of this section shall be paid by the Comptroller to the general fund of the county where the person is held for the operation of the county jail." (Emphasis added.) "Person" is defined, in pertinent part, in § 13A-12-200.1(18) as "[a]ny individual." Thus, the language of the statute indicates that the legislature contemplated multiple violations of the statute by an individual, otherwise the legislature could have stated "[i]f a person is held ... [for violating] this section," or something comparable to denote a recognition that only a single violation of the statute was contemplated.
If one looks also to the purpose of the statute, as noted in Part III.B. of this *169 opinion, the legislative intent underlying the enactment of § 13A-12-200.11 was to suppress the proliferation of the kind of adult-only entertainment provided by X-Citing Tans. The State's interpretation of § 13A-12-200.11 is consistent with the purpose of the statute. The possibility of multiple convictions and cumulative punishment in cases such as this one serve as a strong deterrent to those who engage in the kind of activity proscribed by § 13A-12-200.11. Indeed, strong policy arguments have been made against the "single business or transaction" theory argued by Scott. In United States v. Cooper, 966 F.2d 936 (5th Cir.1992), for example, the United States Court of Appeals for the Fifth Circuit held that maintenance of a "crack" house constituted a separate violation of the same statute each day it continued. In that case, the government argued that under the "single business" theory, drug offenders would lack incentive to stop their operations even after they were caught because they would be subject to only one conviction regardless of the number of times their "business" was reopened. In light of our interpretation of § 13A-12-200.11, based on the language and purpose of the statute we find the rule of lenity inapplicable.
This Court has upheld multiple convictions based on the same statute, so long as they encompass separate violations, even if motivated by a single financial scheme. In King, this Court held that King had committed multiple violations of one statute by separate, individual transactions  five obscene tapes rented on one day and two tapes rented on another day. We have distinguished King from Girard as follows:
"The act rendered illegal by the statute [§ 13A-12-192(b), Ala.Code 1975]  the possession of any obscene matter, even if the possession is of multiple pieces of obscene matter  is simultaneous and inseparable, more like the simultaneous, single act of transportation or importation of multiple pieces of obscene matter, see United States v. Meyer, 602 F.Supp. 1480 (S.D.Cal.1985), than the separate transactions involved in the distribution of multiple pieces of obscene matter, see King v. State, 674 So.2d 1381 (Ala.Crim.App.1995). Thus the unit of prosecution is the simultaneous possession of a collection of obscene material; in this case, there was but one possession."
Girard, 883 So.2d at 717 (footnote omitted). Although distinguishable on its facts from King, the present case is more like King than Girard, in the sense that the language and purpose of § 13A-12-200.11, like that of § 13A-12-200.2(1), Ala.Code 1975, as interpreted in King, indicate the legislature's intent to treat each act proscribed by the statute as a punishable violation (here, each act of allowing an obscene performance featuring the objectionable display of certain parts of the human body; in King, each act of distributing a specific obscene item), rather than as the kind of simultaneous and inseparable act rendered illegal by the statute in Girard  the possession of any obscene matter, even if possession is of multiple pieces of obscene matter.
Thus, Scott was properly charged with two violations of § 13A-12-200.11, and the trial court properly denied Scott's motion to dismiss one of the indictments against him.

III.
Finally, Scott contends that the trial court erred in denying his motion to declare § 13A-12-200.11 unconstitutionally vague.
"The interpretation of a statute involves a question of law and an appellate court reviews a trial court's interpretation *170 de novo, without any presumption of correctness. Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197 (Ala. 2001). `"[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo." Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).' Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999)."
Girard v. State, 883 So.2d 717, 719 (Ala. 2003).
In Vaughn v. State, 880 So.2d 1178 (Ala.Crim.App.2003), this Court stated:
"`"The doctrine of vagueness ... originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
"`"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate `notice of the required conduct to one who would avoid its penalties,' Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (195[2]), is not `sufficiently focused to forewarn of both its reach and coverage,' United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and `may trap the innocent by not providing fair warning,' Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).
"`"As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):
"`"`There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt.'
"`"333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50 [citations omitted]."
"`McCrary v. State, 429 So.2d 1121, 1123-24 (Ala.Cr.App.1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983).'
"McCall v. State, 565 So.2d 1163, 1165 (Ala.Crim.App.1990).
"`"`As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' Kolender v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription. See Kolender, supra; Grayned v. City of Rockford, *171 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)."'
"Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala.Crim.App.1993), quoting McCorkle v. State, 446 So.2d 684, 685 (Ala.Crim.App.1983). However,
"`"`[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"'
"Sterling v. State, 701 So.2d 71, 73 (Ala.Crim.App.1997), quoting Culbreath v. State, 667 So.2d 156, 158 (Ala.Crim.App. 1995), abrogated on other grounds by Hayes v. State, 717 So.2d 30 (Ala.Crim.App.1997), quoting in turn, Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).
"`"Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced.'" Scott & Scott, Inc. v. City of Mountain Brook, 844 So.2d 577, 589 (Ala.2002), quoting City of Birmingham v. Samford, 274 Ala. 367, 372, 149 So.2d 271, 275 (1963). The judicial power to declare a statute void for vagueness `should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.' Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962)."
880 So.2d at 1194-96.

A.
Scott first argues that § 13A-12-200.11 is void for vagueness because, he says, the statute "imposes vicarious criminal liability with no element of scienter or personal blameworthiness" (Scott's brief at p. 20).[6]
Section 13A-2-4(b), Ala.Code 1975, provides:
"(b) Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
The commentary to § 13A-2-4, states, in relevant part, that "[s]ubsection (b) explicitly states a policy adverse to arbitrary use of `strict liability' concepts. An express statement is required in the statute defining the offense if strict liability is being imposed."
Section 13A-12-200.11 was enacted in 1998; the statute does not describe a culpable *172 mental state, nor does it expressly state that it is a strict liability offense. Because the Alabama Legislature enacted § 13A-12-200.11 after it enacted § 13A-2-4, the lack of an express statement in § 13A-12-200.11 making it a strict liability statute renders the offense stated in § 13A-12-200.11 an offense of mental culpability. See Ex Parte Phillips, 771 So.2d 1066, 1069 (Ala.2000) ("Therefore, we must assume that the Legislature was aware of § 13A-2-4, when it revised § 9-11-244, and chose not to make the offense a strict-liability offense."). See also Harrison v. State, 879 So.2d 594 (Ala.Crim.App.2003).
Section 13A-2-2, Ala.Code 1975, provides the following definitions of culpable mental states:
"(1) Intentionally. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his purpose is to cause that result or to engage in that conduct.
"(2) Knowingly. A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists.
"(3) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto.
"(4) Criminal Negligence. A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence."
In Sullens v. State, 878 So.2d 1216 (Ala.Crim.App.2003), this Court stated:
"In Ex parte Edwards, 816 So.2d 98 (Ala.2001), the Alabama Supreme Court faced the task of determining what mental state is required to commit the offense of vehicular homicide, as set forth in § 32-5A-192, Ala.Code 1975. Section 32-5A-192(a), Ala.Code 1975, provides, in pertinent part:
"`Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.'
"(Emphasis added.) The supreme court determined the following:
"`We conclude that the trial court's initial reservations about tying the requisite mental state to the word "unlawfully" were sound. We endorse the "Use Note on Mens Rea Element" that accompanies the Alabama pattern jury instruction applicable to § 32-5A-192; that note states that "unintentional" *173 is not defined in the Code but that the committee drafting the instruction assumes that word to refer to all forms of mens rea except that described by the word "intentional." The Use Note then refers to the previously referenced defined terms governing mens rea elements  "intentionally," "knowingly," "recklessly," and "criminal negligence."11 Then, the Use Note correctly concludes:
"`"The judge should insert the appropriate mens rea element considering the indictment and the evidence before the court. `There are few, if any, strict liability offenses in this Criminal Code....' Ala.Code § 13A-2-3 Commentary. See also § 13A-2-4(b)."
"`Alabama Pattern Jury Instructions: Criminal, 14-4 to 14-6 (3d ed.1994).
"`11 Because § 32-5A-192(b) uses the word "unintentionally," § 13A-2-2(1), defining "intentionally," has no field of application.'
"Edwards, 816 So.2d at 107.
"Unlike the vehicular homicide statute, § 13A-11-61, Ala.Code 1975, does not expressly exclude intentional conduct. In fact, it does not exclude any of the states of mental culpability set forth in § 13A-2-2, Ala.Code 1975. As did the Alabama Supreme Court in Edwards, we interpret the fact that the statute does not specifically exclude any states of mental culpability to be an indication of the Legislature's intent to include any of the states of mental culpability set forth in § 13A-2-2, Ala.Code 1975. Therefore, we conclude that the offense of discharging a firearm into an occupied vehicle can be committed intentionally, knowingly, recklessly, or with criminal negligence."
878 So.2d at 1222.
As with the statute at issue in Sullens, § 13A-12-200.11 does not exclude any of the culpable mental states set forth in § 13A-2-2; thus, the offense of allowing the display of genitals, etc., for entertainment purposes may be committed intentionally, knowingly, recklessly, or as the result of criminal negligence. The determination as to which mental state may be applicable will turn on the facts of each case. Therefore, the absence of an express statement in § 13A-12-200.11 as to the requisite mental state does not render that statute unconstitutionally vague.

B.
Second, Scott argues that § 13A-12-200.11 is void for vagueness because, he says, the terms "business establishment," "for entertainment purposes," and "allow" are not specifically defined in the statute, and the statute does not mention obscenity.
Although the terms "business establishment," "for entertainment purposes," and "allow" are not specifically defined in the criminal code, we do not find this omission to be fatal. See, e.g., State v. Randall, 669 So.2d 223, 226 (Ala.Crim.App.1995) (holding that Alabama's stalking law, § 13A-6-90 et seq., Ala.Code 1975, was not void for vagueness, even though the terms "repeatedly" and "series" were not specifically defined in the statute); Musgrove v. State, 519 So.2d 565, 582-83 (Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala.1986) (holding that the kidnapping statute, § 13A-6-43, Ala.Code 1975, was not void for vagueness, even though the term "terrorize" was not specifically defined in the statute); and Farris v. State, 432 So.2d 538, 539-40 (Ala.Crim.App.1983) (holding that § 13A-7-44, Ala.Code 1975, criminal possession of ex-plosives, *174 was not void for vagueness, even though the term "explosives" was not specifically defined in the statute).
"It is well accepted that a court, in interpreting a statute, will give words used therein their `"natural, plain, ordinary, and commonly understood meaning."'" Randall, 669 So.2d at 226, quoting Ex parte Etowah County Bd. of Educ., 584 So.2d 528, 530 (Ala.1991).
"`Although penal statutes are to be strictly construed, courts are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning.'"
Musgrove, 519 So.2d at 582, quoting Walker v. State, 428 So.2d 139, 141 (Ala.Crim.App.1982).
"Business" is defined in Black's Law Dictionary 211 (8th ed.2004), in relevant part, as "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." "Establishment" is defined in Black's Law Dictionary 586 (8th ed.2004), in relevant part, as "[a]n institution or place of business."[7] With regard to the word "allow," Black's Law Dictionary 76 (6th ed.1990),[8] provides:
"The word has no rigid or precise meaning, its import varying according to circumstances or context in connection with which it is used. It may mean to bestow or assign to any one as his right or due. To approve of, accept as true, admit, concede, adopt, or fix .... to acquiesce in; ... to tolerate. See also Acquiescence; Consent."
(Emphasis added.) Further, "entertainment purposes," as that term is used in the statute, clearly means for the purpose of entertaining. Finally, although the statute does not specifically mention "obscenity," § 13A-12-200.11 was enacted in 1998 as an amendment to the Alabama Anti-Obscenity Enforcement Act. The legislative statement that preceded the amendment adding § 13A-12-200.11 reads, in relevant part:
"(1) That in order to protect children from exposure to obscenity, prevent assaults on the sensibilities of unwilling adults by the purveyor of obscene material, and suppress the proliferation of `adult-only video stores,' `adult bookstores,' `adult movie houses,' and `adult-only entertainment,' the sale and dissemination of obscene material should be regulated without impinging on the First Amendment rights of free speech by erecting barriers to the open display of erotic and lascivious material."
Act No. 98-467, § 1, Ala. Acts 1998.
When the ordinary and common meaning of the terms "business establishment," "for entertainment purposes," and "allow" are applied to this statute, and, when the statute is read in context with other provisions of § 13A-12-200.1 through § 13A-12-200.12, it is clear that § 13A-12-200.11 governs the obscene display of genitals and other body parts, in a business or private club for the purpose of entertaining. Section 13A-12-200.11 sets out the offense of allowing the display of genitals, etc., for entertainment purposes with sufficient definitiveness that ordinary people are provided fair warning of what conduct is prohibited and who falls within the scope of the statute. Therefore, we hold that § 13A-12-200.11 is not unconstitutionally vague.
*175 Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, J., concur. COBB and SHAW, JJ., concur in part and concur in the result, with opinions. WISE, J., concurs in the result.
COBB, Judge, concurring in part and concurring in the result.
I concur in the main opinion with the exception of Part III.A., as to which I concur in the result.
Section 13A-12-200.11, Ala.Code 1975, does not describe a culpable mental state nor does it express a legislative intent to charge a strict liability offense. The main opinion, citing Sullens v. State, 878 So.2d 1216 (Ala.Crim.App.2003), which quoted Ex parte Edwards, 816 So.2d 98 (Ala. 2001), found that the failure of the statute to specify a mental state did not render it unconstitutionally vague. The Alabama Supreme Court had the opportunity to address this issue on certiorari review of Sullens, and it declined to do so. Therefore, I am compelled to concur in the result reached by the majority as to this issue.
I remain concerned about the resolution of this issue for the reasons I expressed in Burnett v. State, 807 So.2d 573, 580 (Ala.Crim.App.1999)(Cobb, J., dissenting), rev'd, 807 So.2d 586 (Ala.2001); Edwards v. State, 816 So.2d 92, 92 (Ala.Crim.App. 2000)(Cobb, J., dissenting), rev'd, 816 So.2d 98 (Ala.2001); Harrison v. State, 879 So.2d 594, 608 (Ala.Crim.App.2003)(Shaw, J., concurring in the result); and Sullens v. State, 878 So.2d 1216, 1232 (Ala.Crim.App. 2003). The failure of an indictment to allege an essential element of the offense  a culpable mental state  violates basic principles regarding due process of law. Accordingly, I encourage the Alabama Supreme Court to re-analyze this important issue. Because this Court is bound by existing precedent, I reluctantly concur in the result as to Part III.A.
SHAW, Judge, concurring in part and concurring in the result.
I concur in the main opinion with the exception of part III.A., as to which I concur in the result only.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] The guilty pleas were apparently negotiated pleas inasmuch as the State agreed to nolle pros four additional charges pending against Scott, but were blind with respect to sentencing in that the State made no recommendation as to that aspect of the proceeding.
[3] Scott originally pleaded guilty on October 28, 2002. This Court affirmed his convictions and sentences on appeal in an unpublished memorandum issued on April 18, 2003. See Scott v. State (No. CR-02-0542), 880 So.2d 509 (Ala.Crim.App.2003) (table). On September 2, 2003, Scott filed a Rule 32, Ala.R.Crim.P., petition for postconviction relief, and on September 23, 2003, the circuit court purported to grant Scott an out-of-time appeal from his convictions and sentences. Scott timely filed a motion to reconsider the circuit court's ruling and moved this Court to dismiss the out-of-time appeal; we granted the motion to dismiss the out-of-time appeal. On April 1, 2004, the circuit court granted Scott's motion to reconsider and vacated Scott's convictions and sentences. Although the circuit court's April 1, 2004, ruling on Scott's motion to reconsider was over six months after it had initially, on September 23, 2003, purported to grant Scott's Rule 32 petition by granting an out-of-time appeal, see, e.g., Loggins v. State, 910 So.2d 146 (Ala.Crim.App.2005) (a circuit court loses jurisdiction to modify a ruling on a Rule 32 petition 30 days after the ruling is entered), the circuit court had no jurisdiction to grant an out-of-time appeal to Scott, who had already had an appeal. See Ingram v. State, 720 So.2d 1036 (Ala.Crim.App.1998) (a circuit court has no jurisdiction to grant an out-of-time appeal to a defendant who has already had an appeal). Therefore, the court's September 23, 2003, judgment was void, and its April 1, 2004, order, although purportedly an order on Scott's motion to reconsider, was, in fact, the court's ruling on Scott's Rule 32 petition. On April 1, 2004, Scott again pleaded guilty. It is from the 2004 guilty-plea convictions and sentences that Scott now appeals.
[4] The above-quoted factual statement was taken from an affidavit provided by the prosecutor for the court reporter to transcribe.
[5] In affirming this Court's decision in Girard, the Alabama Supreme Court quoted favorably from this Court's opinion, including the entire portion quoted above.
[6] Although the State recognizes Scott's argument in this regard in its brief on appeal, it does not specifically address the argument.
[7] "Place of business" is defined in Black's Law Dictionary 1187 (8th ed.2004), as "[a] location at which one carries on a business."
[8] No definition for the word "allow" appears in the seventh edition or the eighth edition of Black's Law Dictionary.