Joe Alderman, the appellant, pleaded guilty to and was convicted of the offense of theft in the second degree. Three issues are raised in this appeal.
The appellant was originally indicted for the offense of theft in the first degree. On September 9, 1991, the case was called for trial and a jury was struck. After the jury was empaneled, but before opening statements and the presentation of any evidence, trial was recessed for lunch. When trial resumed, defense counsel notified the trial court, out of the presence of the jury, that the appellant wished to enter a guilty plea. The prosecutor then stated that he "intend[ed] to file an amended count two stating theft of property in the second degree." PR. 31.[1]
In response to specific questioning by the trial judge, the appellant stated that he was 26 years of age and that he had attended college for a year and a half. He further stated that he was not "under psychiatric treatment," was not "experiencing mental or emotional problems," or was not "under the influence of any medication, drugs, or alcohol." PR. 33-34. The trial judge advised the appellant that theft in the second degree is a Class C felony and explained to him the elements of and the correct range of punishment for that offense. PR. 34-36. The trial judge also gave the appellant a detailed explanation of the rights he would waive by pleading guilty. PR. 37-39.
The appellant responded negatively to the trial judge's questions of whether anyone had threatened him or offered him a reward to plead guilty, or promised him that he would be placed on probation or given a suspended sentence. PR. 39-40. After hearing what the prosecutor expected the evidence to show, PR. 40-42, the trial judge accepted the appellant's guilty plea and adjudged the appellant guilty, PR. 43.
During the sentencing hearing held October 11, 1991, the appellant sought to withdraw his plea, alleging that the plea had been induced by misrepresentation. This request was denied by the trial court, and the appellant was sentenced to six years' imprisonment, was fined $6,002, and was ordered to pay restitution in the amount of $3,001. In response to the appellant's application for probation, the trial court stated: "He will be on probation for five years after two years of incarceration." SR. 32.[2]
On November 8, 1991, appellate counsel[3] filed a written motion to withdraw the plea. The grounds for this motion were: (1) that the guilty plea was induced by misrepresentation; (2) that there was no factual basis for the plea; and (3) that the appellant's "due process and Sixth Amendment rights were violated at the sentencing hearing," Supp.R. 9, when the trial court permitted the prosecutor to introduce hearsay evidence and then imposed an excessive sentence. The State filed a written response opposing this motion. The trial court denied the motion to withdraw in a written order stating that it had considered both the appellant's motion and the State's response thereto.
 I
The appellant contends that his guilty plea was induced by a misrepresentation on the part of the prosecutor and therefore was not voluntarily and intelligently made. *Page 643 
The appellant was charged with theft by deception in connection with a construction consulting contract that he had with the victims. See Part II below. At the sentencing proceeding, the prosecutor stated that the presentence report[4] was "very much incomplete," SR. 4, and that he had "quite a bit of information" to relate that was "important to the Court," SR. 5. During the discussion on whether the prosecutor would be permitted to provide this information to the court, defense counsel sought a continuance, or, in the alternative, permission for the appellant to withdraw his plea. As grounds for the motion to withdraw the plea, defense counsel stated that he "was given information that proved not to be true," SR. 9, and that this erroneous information caused him to wrongly advise the appellant to plead guilty. The trial court then stated:
 "Taking your requests in [the] order in which you have presented them, I deny the request for a continuance. And, before I can rule on your request to set the guilty plea aside, I need to know what information you have received from which sources and in relationship to which prosecutions." SR 10.
The gist of defense counsel's response was that, during the plea negotiations, the prosecutor stated that if the appellant pleaded guilty to the instant offense, he would not be prosecuted for his activities in connection with an investment agreement he had entered into with Ms. Wanda Irby. According to defense counsel:
 "[The prosecutor] also indicated he [(the appellant)] would be prosecuted by Wanda Irby. She tells me that she has never talked to the District Attorney about prosecution of my client. I think probably Mr. Binford [the prosecutor] was quoting some attorney. I don't know. I am telling you what he said. As a result of that, I counselled my client that it would probably have been in his best interest to enter a guilty plea. After discovering that Mrs. Irby had never intended to prosecute my client, I don't think that would be successful. . . . I would not have advised my client to plea guilty." SR. 11.
In an affidavit filed in support of the appellant's written motion to withdraw his guilty plea, defense counsel averred that, "[a]s a part of [the] plea bargain offer, Mr. Binford stated that he would not pursue indictments arising out of actions involving Wanda Irby if [the appellant] entered a guilty plea. Mr. Binford specifically stated that Wanda Irby wanted to and intended to pursue criminal prosecution against [the appellant]." Supp.R. 11. In his affidavit filed in support of the motion to withdraw the plea, the appellant averred that defense counsel
 "told me the district attorney had advised him that Ms. Irby wanted me prosecuted, and he was taking the matter involving Ms. Irby to a grand jury the following Monday, at which time he would obtain four indictments against me. He further stated that he would seek the maximum sentence of twenty years in each of the four indictments.
". . . .
 "Based on what my lawyer told me, I believed that Ms. Irby had told the district attorney that she was going to pursue felony charges against me, and that she would do so the following Monday by appearing before the grand jury and asking the grand jury to indict me. Had I known that Ms. Irby did not believe that I had committed a criminal act or acts against her and that she did not wish to pursue criminal charges against me, I would not have accepted the plea bargain offer made by the State of Alabama." Supp.R. 15-16.
At the sentencing hearing, the prosecutor stated that, in the discussion of the plea bargain, he had informed defense counsel that he (the prosecutor) had discussed with an investigator for the Alabama Securities Commission the possibility of investigating the appellant for securities fraud in connection *Page 644 
with the investment agreement the appellant had with Ms. Irby.[5] SR. 14. He further stated:
 "We were prone to do that, whether Wanda Irby wanted to prosecute or not. And, we agreed, as part of the plea of guilty, that if he plead guilty to this felony, knowing we opposed probation, we w[ould] agree not to proceed with that case to the Alabama Securities Commission." SR. 14-15.
In his affidavit filed in support of the State's response to the motion to withdraw the plea, the prosecutor averred that he did not, at any time, tell defense counsel "that Wanda Irby was independently pursuing or wished to independently pursue or initiate criminal prosecution of the defendant arising from the defendant's involvement in the . . . investment agreement." Supp.R. 20.
It is clear that, to be valid, a guilty plea must be both voluntarily and intelligently made. E.g., Hill v. Lockhart,474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); Boykinv. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711,23 L.Ed.2d 274 (1969). It is equally clear that "[a] guilty plea is not voluntary if induced by misrepresentation. . . . Brady v.United States, 397 U.S. 742, 755, 90 S.Ct. 1463[, 1472,]25 L.Ed.2d 747 (1970)." Lepera v. United States, 587 F.2d 433, 436
n. 4 (9th Cir. 1978). In the present case, there was conflicting evidence as to whether any misrepresentation was actually made by the prosecutor. However, we think the dispositive question in this situation is not whether a misrepresentation was in fact made, but whether, as the appellant claims, his plea was actually induced by information or misinformation relayed to him. Cf. United States v. Marzgliano, 588 F.2d 395, 399 (3d Cir. 1978) (the fact that no plea agreement existed was not dispositive of whether the defendant's plea was induced by false promises); United States v. Rhodes, 913 F.2d 839, 843
(10th Cir. 1990) ("[a] plea may be involuntary when an attorney 'materially misinforms the defendant of the consequences of the plea' "), cert. denied, ___ U.S. ___, 111 S.Ct. 1079,112 L.Ed.2d 1184 (1991).
The trial court, of course, was in the best position to determine whether the plea was induced in any way. Cf. Ex parteSwain, 527 So.2d 1279, 1280 (Ala. 1988) (where defendant alleged that prosecution was barred by plea agreement in an earlier case and existence of agreement was contested, the "trial judge was in the best position to determine whether a plea agreement had been reached"). In denying the appellant's oral motion to withdraw his plea made at the sentencing hearing, the trial court made an express "find[ing] that there is no appropriate basis on which to allow the guilty plea to be withdrawn." SR. 16. This finding is supported by the record.
Immediately after defense counsel informed the trial court that the appellant wished to plead guilty, the following exchange took place:
 "MR. BULLARD: . . . Mr. Binford, I understand, has something he's going to put on the record.
 "MR. BINFORD: Yes, sir. I intend to file an amended count two stating theft of property in the second degree.
 "MR. BULLARD: And also the part that Ms. Irby —
"MR. BINFORD: Right. I'll put that on the record.
 "MR. BULLARD: Is the district attorney going to put that on the record?
"MR. BINFORD: As far as the Securities Commission?
"MR. BULLARD: Yes. And the theft.
"MR. BINFORD: Right.
"MR. BULLARD: And about Wanda Irby.
 "(Whereupon an off-the-record conference transpired. . . .)" PR. 31-32.
This matter was not mentioned again until after the appellant's guilty plea had been accepted by the trial court. After a *Page 645 
sentencing date was set, the following occurred:
 "MR. BULLARD: Judge, also, Mr. Binford is going to put something on the record for us.
 "MR. BINFORD: Judge, in exchange for the defendant's guilty plea to theft of property in the second degree, the State agreed to the following: I have agreed on behalf of the State not to pursue any criminal action arising out of any of the financial dealings this defendant had with one Wanda Irby, a resident [of] Dothan. That agreement includes not pursuing any type of criminal action which would allegedly violate the Alabama Securities Act.
 "I have spoken to Ms. Irby regarding that and she stated to me that she has not pursued any criminal action regarding these financial dealings she had with the defendant, nor does she intend to." PR. 44-45 (emphasis added).
Neither defense counsel nor the appellant took issue with this statement. By failing to correct in any way the prosecutor's statement concerning Ms. Irby, the appellant must be deemed to have agreed with that statement. Cf. Ex parteCassady, 486 So.2d 453, 455 (Ala. 1986) ("By remaining silent" after defense counsel stated his understanding of the plea agreement, the State "at least implicitly" agreed that those were the terms of the agreement). Ms. Irby's intentions were obviously important to the appellant — defense counsel had, no less than three times, requested the prosecutor to "put something on the record" concerning Ms. Irby, and the appellant, according to his affidavit, accepted the plea agreement in this case only because he thought Ms. Irby wanted to prosecute him for another matter. It is therefore incomprehensible that both the appellant and defense counsel failed to say anything when the prosecutor stated on the record that Ms. Irby was not pursuing criminal prosecution of the appellant and had no intent to do so, unless that is what they had previously understood.
We note that, at the plea proceeding, the trial court specifically asked the appellant the following questions: (1) "Has anybody threatened you, harassed you, or tried in any wayto make you plead guilty?" and (2) "Have they offered you any reward or inducement to get you to plead guilty?" PR. 39. The appellant responded, "No, sir" to both questions. PR. 39-40. Before accepting the appellant's guilty plea, the trial court stated: "Based on everything that you have told me, I find that your plea is intelligent, voluntary, and knowing. I am going to accept it if you decide to offer it." PR. 40. In view of the age and educational level of the appellant and the careful and thorough questioning of the appellant by the trial court, we have no hesitation in concluding that this finding was correct. The appellant's claim that his plea was induced by misrepresentation, or even misconveyed information, is simply not substantiated by the record before us. See Key v. UnitedStates, 806 F.2d 133, 136 (7th Cir. 1986); United States v.Marsh, 733 F. Supp. 90, 93 (D.Kan. 1990).
 II
The appellant maintains that there was no factual basis for his plea and that, consequently, the trial judge erred in accepting the plea.
It is well settled that, in a guilty plea proceeding, "[t]he trial judge should be satisfied that there is a factual basis for [the] guilty plea, and this should be developed on the record." Allison v. State, 495 So.2d 739, 741
(Ala.Cr.App. 1986). Accord, e.g., McNalley v. State,468 So.2d 209, 213 (Ala.Cr.App. 1985); Cashin v. State, 428 So.2d 179, 182
(Ala.Cr.App. 1982). The development of the factual basis may be established by "several sources," Yamada v. State,426 So.2d 906, 909 (Ala. 1982), including the district attorney's "assertions of what he expects the evidence to show," Atteberryv. State, 448 So.2d 425, 427 (Ala.Cr.App. 1983). In fact, "[w]here the offense is simple and the charge is quite specific . . . a reading of the charge" will suffice. Young v. State,408 So.2d 199, 201 (Ala.Cr.App. 1981).
We are of the opinion that the following excerpts from the plea proceeding demonstrate *Page 646 
that an adequate factual basis was developed in the instant case:
 "THE COURT: Do you understand that the State wishes to amend [the original charge of first degree theft] by charging you with theft of property in the second degree?
"THE DEFENDANT: That's correct.
 "THE COURT: Do you understand that theft in the second degree is a Class C felony?
"THE DEFENDANT: That's correct.
 "THE COURT: In order to prove the charge of theft in the second degree, the State would have to prove by the evidence that you got control of money belonging to [the victim], you did so knowingly by deception and had the intent to deprive him of his money, and that the money amounted to more than a hundred dollars. Do you understand that that's what they've got to prove?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you understand further that they would have to prove each of those things beyond a reasonable doubt by the evidence?
"THE DEFENDANT: Yes, sir." PR. 34-35.
After informing the appellant of the range of punishment for theft in the second degree and explaining the rights that he would be waiving by pleading guilty, the trial court asked the prosecutor what he "expect[ed] the facts to be." PR. 40. The following then occurred:
 "MR. BINFORD: Your Honor, we expect the evidence in the case to show that the defendant signed a consultant agreement with Dr. Jimmy Bellone and his wife, Janet Bellone, wherein the defendant was to be paid five hundred dollars a week for a consultant's fee. The defendant was to make arrangements for the supplies or the supply of materials to be delivered to the home building site for the Bellones.
 "We would expect the evidence to show that the Bellones agreed to pay the materials suppliers directly themselves and that, in addition to those payments, the Bellones agreed to pay directly to Mr. Alderman all sums of money due for the crews which were laboring on the building of the home including the masonry crew and the framing crew.
 "The State's evidence will show that between July 1st of 1990 and October 15th of 1990, that the defendant overcharged the Bellones in an amount of money that is within the parameters of the amended count two and that the Bellones at no time gave him permission to overcharge them by this amount and also that this offense took place here in Houston County, Alabama.
 "THE COURT: All right. Mr. Alderman, you have heard what the district attorney has said about the facts in your case. Has he told me the facts the way they happened?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Is there anything that you feel is important which he has omitted telling me?
"THE DEFENDANT: No, sir.
 "THE COURT: Is there anything that you want to tell me about the facts, anything at all that you feel I should know?
"THE DEFENDANT: No, sir, Your Honor
 "THE COURT: Okay. . . ." PR. 40-43 (emphasis added).
The appellant makes much of the fact that the prosecutor stated only that he "overcharged" the victims. He maintains that this was insufficient to establish the elements of intent and knowing deception that are required for a conviction of second degree theft by deception. See Ala. Code 1975, §§13A-8-2(2), 13A-8-4. It is the appellant's position on appeal that he never intended to deprive the victims of their money and that the whole matter was the result of a misunderstanding. We observe that he did not, at the time of entering his guilty plea, make this position known to the trial judge, although he clearly had the opportunity to do so.[6] Compare Yamada *Page 647 v. State, 426 So.2d at 909 (defendant pleaded guilty to forgery in the second degree while maintaining that he had no criminal intent); Bowen v. State, 536 So.2d 168, 169 (Ala.Cr.App. 1988) (defendant pleaded guilty to second degree assault while maintaining that "the gun went off accidentally").
The purpose of requiring the trial judge to determine that there is a factual basis for the plea "is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." United States v. Keiswetter,860 F.2d 992, 995 (10th Cir. 1988), remand order withdrawn and plea vacated on rehearing, 866 F.2d 1301 (10th Cir. 1989) (en banc). In this case, the trial court clearly explained the elements of second degree theft of property, including the necessary intent and the requirement of knowing deception. Compare Henderson v. Morgan, 426 U.S. 637, 638, 96 S.Ct. 2253,2254, 49 L.Ed.2d 108 (1976) (defendant who pleaded guilty to second degree murder was never informed that "intent to cause the death of his victim was an element of the offense"). He further informed the appellant that the State would have to prove each of these elements beyond a reasonable doubt. When this explanation is read in conjunction with the prosecutor's statement of the evidence and the appellant's answers to the trial court's questions immediately thereafter, it is quite clear that a sufficient factual basis was established. See Lukev. State, 439 So.2d 804 (Ala.Cr.App. 1983).
"The only factual basis required for a guilty plea is that which will satisfy the court that the appellant knows what he is pleading guilty to." Garner v. State, 455 So.2d 939, 940
(Ala.Cr.App.), cert. denied, 455 So.2d 940 (Ala. 1984). In this case, the appellant clearly understood what he was pleading to, and, as we concluded in Part I above, his plea was voluntarily and intelligently made. Under these circumstances, "the mere fact that he [now] denie[s] any criminal intent is insufficient to override . . . [the] guilty plea." Yamada v. State,426 So.2d at 910. See also Bowen v. State, 536 So.2d at 169.
Moreover, this issue is essentially an argument that the State failed to prove a necessary element of the offense. As this Court has repeatedly observed in the face of such an argument:
 " 'A voluntary and intelligent plea of guilty is conclusive as to the defendant's guilt, constitutes an admission of all facts sufficiently charged in the indictment, and obviates the necessity of proof by the State. Dingler v. State, 408 So.2d 530 (Ala. 1981); Ex parte Sankey, 364 So.2d 362 (Ala. 1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1513, 59 L.Ed.2d 779 (1979). The plea admits to all elements of the offense. Carr v. State, 406 So.2d 440 (Ala.Cr.App. 1981).' "
Mewbourn v. State, 570 So.2d 805, 812 (Ala.Cr.App. 1990) (quoting Wooten v. State, 455 So.2d 991, 992 (Ala.Cr.App. 1984)) (emphasis added in Mewbourn). Accord Russell v. State,428 So.2d 131, 134 (Ala. 1982).
 III
The last issue raised by the appellant concerns his dissatisfaction with the sentence imposed and with the trial court's denial of his request for probation. We do not doubt that the appellant and his counsel expected that a shorter sentence would be imposed and that the trial court would grant the appellant's probation request. However, "[t]he mere hope, subjective belief, or expectation of a defendant [and his counsel] regarding length of sentence, parole, conditions of confinement, and other similar matters which are not based upon a promise by the state are insufficient to warrant the withdrawal of a guilty plea as unknowingly or involuntarily made." Culver v. State, 549 So.2d 568, 571 (Ala.Cr.App. 1989). Furthermore, " '[t]he fact that a defendant who has knowingly and intelligently *Page 648 
pleaded guilty later becomes dissatisfied with the sentence he received does not, alone, constitute a ground for invalidating the guilty plea.' " Bland v. State, 565 So.2d 1240, 1242-43
(Ala.Cr.App. 1990) (quoting State v. Holman, 486 So.2d 500, 503
(Ala. 1986)).
There was no allegation made below, nor is one made in this appeal, that the State in any way promised or assured the appellant of a particular sentence. At the plea proceeding, the trial court informed the appellant that "[t]he district attorney will not have an opportunity to recommend a sentence in your case. I will set the sentence within the range that I have told you about based on the presentence report." PR. 36. After ascertaining that the appellant understood this, the trial court continued:
 "[The prosecution] may have an opportunity to make a recommendation about probation or a suspended sentence. I am not bound by their recommendation. The decision concerning probation, a suspended sentence, or sentencing itself rests entirely with me as the trial judge in your case. Do you understand that?" Id.
The appellant replied, "Yes, sir."
At the sentencing hearing, the trial court permitted the district attorney, over the objection of the appellant (see Part I above) to relate several other instances in which the appellant was alleged to have engaged in some type of misconduct with regard to other peoples' money. The appellant argues that instead of sentencing him based upon the presentence report, as the court had previously stated that it would, the trial court sentenced him unfairly "based upon the unsubstantiated hearsay allegations of the district attorney." Appellant's brief at 21.
This allegation is refuted by the trial court's remarks immediately prior to imposing sentence:
 "Quite frankly, I think both sides to these controversies have discussed practically everything but what is really involved here. Your client plead guilty to a felony and as far as any alleged attacks on his character [are] concerned, Mr. Bullard, he comes before the Court as a convicted felon, a person whose credibility will forever be subject to attack because of his conviction. I certainly do not consider what the State has sought to prove in this context to be in any sense character assassination. But really, what is at stake here is not whether or not Mr. Alderman played fast and loose with a four thousand dollar check in Bay County, Florida, or wrote threatening letters to somebody's lawyer or anything of that nature. Very simply put, Mr. Alderman stood in a fiduciary relationship to the victim in this case and he has admitted, by his plea of guilty, to bilking that victim of money. The standard applicable to fiduciaries was never more eloquently put than by Justice Cardozo in [Meinhard vs. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)] in which he refers to the standard as being the 'punctilio of an honor the most sensitive.' And, your client has shown the contempt which he has for that standard and I am going to pronounce sentence accordingly." SR. 29-30 (emphasis added).
A sentencing judge may consider "criminal activity [on the part of the defendant] that did not result in a conviction,"Jackson v. State, 501 So.2d 542, 548 (Ala.Cr.App. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987), and may also consider hearsay evidence, "so long as the appellant had a fair opportunity to rebut any hearsay statements," Smiley v. State, 435 So.2d 202, 206
(Ala.Cr.App. 1983). See also Rule 6(b)(2), A.R.Crim. P.Temp. (now Rule 26.6(b)(2), A.R.Crim.P.) (providing that "[a]ny evidence that the court deems to have probative value may be received [at a sentence hearing], regardless of its admissibility under the rules of evidence").
The appellant was clearly granted an opportunity at the sentence hearing to respond to the prosecutor's hearsay allegations. He contends that this opportunity was inadequate and that the trial court should have granted his request for a continuance *Page 649 
so that he could properly rebut the prosecutor's allegations. Any error that might have been occasioned by the trial court's denial of the appellant's request for a continuance was undoubtedly harmless. It is clear from the statements of the trial judge quoted above that he imposed sentence solely on the basis of the appellant's conduct in this particular case. Cf.Godfrey v. State, 383 So.2d 575, 579 (Ala.Cr.App.) (although the trial judge "allude[d] to hearsay information during the [sentencing] hearing, it is evident that he considered the defendant's behavior at the time of the offense to be of prime importance" in setting the sentence), cert. denied,383 So.2d 579 (Ala. 1980), cert. denied, 449 U.S. 903, 101 S.Ct. 276,66 L.Ed.2d 134 (1980).
As part of this last issue, the appellant also claims that the six-year sentence imposed by the trial court and the denial of probation violated the sentencing principles contained in Rule 26.8, A.R.Crim. P.[7] The new Alabama Rules of Criminal Procedure, however, "automatically apply" only to "criminal proceedings commenced at or after 12:01 a.m., January 1, 1991." Rule 1.5, A.R.Crim.P. and Committee Comments thereto. The indictment against the appellant was filed December 14, 1990. CR. 6. Thus, his case was pending at the time the new rules went into effect, see Committee Comments to Rule 1.5, and the old Temporary Rules of Criminal Procedure apply in his case.[8]
See H. Maddox, Alabama Rules of Criminal Procedure, § 1.5 (1990). There is no Temporary Rule comparable to current Rule 26.8. Furthermore, Rule 26.8 was not brought to the attention of the trial judge at the sentence hearing or in the written motion to withdraw the plea.
The sentence of six years imposed in this case was clearly within the range of punishment for the offense. See Ala. Code 1975, §§ 13A-8-4(b); 13A-5-6(a)(3). Where a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion. See Coleman v. State,516 So.2d 871, 874 (Ala.Cr.App. 1987); Pickron v. State, 475 So.2d 600,601 (Ala.Cr.App. 1985). We find no abuse of discretion in this case. See Cashin v. State, 428 So.2d 179, 180 (Ala.Cr.App. 1982) (sentence of six years' imprisonment imposed where defendant who was originally charged with theft of property in the first degree pleaded guilty to theft of property in the second degree). As for the appellant's contention regarding probation, we have repeatedly held that " 'the original granting or denial of probation is entirely within the discretion of the trial court and is not reviewable upon appeal from a judgment of conviction.' " German v. State, 492 So.2d 622, 625
(Ala.Cr.App. 1985) (quoting Roden v. State, 384 So.2d 1248, 1249
(Ala.Cr.App. 1980). Accord Wray v. State, 472 So.2d 1119, 1121
(Ala. 1985); Smitherman v. State, 340 So.2d 896, 900
(Ala.Cr.App.), cert. denied, 340 So.2d 900 (Ala. 1976).[9] *Page 650 
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Different court reporters were present at the separate plea and sentencing proceedings held in this case. Each reporter has numbered the transcript she or he prepared separately, beginning with page 1. To avoid confusion, we will refer to the transcript of the plea proceeding as "PR. ___" and to the transcript of the sentencing proceeding as "SR. ___." The clerk's portion of the original record and the supplemental record, both of which are also separately numbered, beginning with page 1, will be referred to as "CR. ___" and "Supp.R. ___," respectively.
[2] It appears that the trial court later rescinded this split sentence in granting the appellant's request for an appeal bond.
[3] The appellant was represented by attorney W. Terry Bullard at the plea proceedings and at sentencing. He is represented in this appeal by attorney Dennis N. Balske, who also filed the post-sentencing motion to withdraw the plea.
[4] At the plea proceeding, the trial court asked "[d]oes the defense request a presentence report," and defense counsel answered, "No, sir." PR. 43. The prosecutor, however, requested that a presentence report be prepared. Id.
[5] According to the prosecutor, Ms. Irby "lost in excess of probably fifty thousand dollars pursuant to that investment contract." SR. 14.
[6] The "Subject's Statement" in the presentence report recites that "[a] misunderstanding on my part resulted in my depriving Dr. Bellone of his lawful property. My actions were improper and I regret them. I have a stable job and family and do not intend to ever be in trouble again." CR. 30. However, this report was not before the trial court at the time the plea was entered.
[7] This rule sets forth the following sentencing principles:
 "The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime. In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities.
 "Judges should be sensitive to the impact their sentences have on all components of the criminal justice system and should consider alternatives to long-term institutional confinement or incarceration in cases involving offenders whom the court deems to pose no serious danger to society."
[8] Although the parties to a criminal proceeding pending at the time the new rules went into effect may, with the consent of the court, "agree to operate under [the new] rules," Committee Comments to Rule 1.5, there is absolutely nothing in the record to indicate that any such agreement was entered into in this case. Compare H. Maddox, Alabama Rules of Criminal Procedure, § 1.5 (1990) "[a]ny agreement by the parties in pending criminal proceedings to be bound by the terms of the new Rules should be in writing, or the terms of the agreement should appear of record in the case").
[9] Because Rule 26.8 was clearly not applicable to the appellant's case and because the rule was clearly not relied on by the appellant at sentencing, we deem it inappropriate to address the issue of any apparent conflict between the cases cited in this paragraph and that Rule.