[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1209 
Pursuant to a plea agreement with the State, Billy Joe Sellers pleaded guilty to violating the Community Notification Act, §15-20-20 et seq., Ala. Code 1975; specifically, he pleaded guilty to "establish[ing] a residence or any other living accommodation where a minor resides," a violation of § 15-20-26(c), Ala. Code 1975. He stipulated to having two prior felony convictions, and, in accordance with the plea agreement, he was sentenced as a habitual offender to 10 years' imprisonment. The sentence was split; Sellers was ordered to serve three years in confinement followed by two years on probation; and the trial court postponed the confinement portion of the sentence for one year. As part of the plea agreement with the State, Sellers expressly reserved the right to appeal the trial court's denial of his motion to dismiss the indictment and his motion seeking to have § 15-20-26(c) declared unconstitutional, as well as the sufficiency of the factual basis for his plea.
At the time of the offense in this case, § 15-20-26(c) provided that "[n]o adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides,"[1] and § 15-20-26(f) provided that "[a]n adult criminal sex offender who knowingly violates the provisions of this section shall be guilty of a Class C felony."[2] The indictment charged that Sellers:
 "after previously being convicted of Sexual Abuse I and/or Sexual Abuse II, did knowingly and/or unlawfully establish a residence or any other living accommodation, to-wit: 6629 Ashwood Circle, Montgomery, Alabama, with a minor not related by blood or marriage, in violation of Section 15-20-26
of the Code of Alabama 1975."
(C. 8.)
For purposes of this appeal, the parties entered into a stipulation of facts regarding the circumstances of the crime.[3] That stipulation, which included statements various people made to the police, indicates that Sellers, an adult registered sex offender, allowed a friend and her two-year-old daughter to stay at his residence the first weekend in March 2004. On Monday, March 8, 2004, Toni Rucker, an employee of the Alabama Department of Human Resources ("DHR"), served a pickup order for the child because she believed the child was not being kept in a safe environment. Rucker, a case worker assigned to the child, indicated in a statement she gave to police that she found the child playing with Sellers in Sellers's front yard at approximately 4:00 p.m. on March 8; that Sellers *Page 1210 
told her that the child and the child's mother had been staying with him for several days and that he "had been trying to get [them] to leave his home because he knew it wasn't good for her to be there but that he couldn't put them out on the streets" (C. 73); and that the child's mother told her that she and the child had been staying with Sellers since the previous Thursday. During her interview by police, the child's mother was asked where she was living when DHR took her daughter into custody on March 8, 2004, to which she responded, "At that time nowhere." (C. 75.) The child's mother indicated that she had been released from a rehabilitation clinic on Thursday, March 4, 2004; that she went to her mother's residence where Rucker had met her and advised her that the child was supposed to stay at that location "but [that] I could take her off when I wanted to" (R. 76); and that after Rucker left, she took the child with her and eventually ended up at Sellers's residence. The child's mother could not remember whether she had gone directly from her mother's house to Sellers's house, but said that when DHR picked up her child on Monday, she had been staying with Sellers for only two days and that Sellers had slept in his truck while she and the child had slept inside the house. During the guilty-plea colloquy, the prosecutor's factual basis for the plea was that Sellers is a registered sex offender and that he allowed a two-year-old child to live in his residence in Montgomery County for four days — from Thursday to the following Monday.
 I.
Sellers contends that the trial court erred in denying his motion seeking to have § 15-20-26(c) declared unconstitutional because of vagueness. Specifically, he argues, § 15-20-26(c) is void for vagueness because, he says, the term "living accommodation" is not specifically defined in the statute.
 "`"The doctrine of vagueness . . . originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
 "`"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996
(1954). A vague statute does not give adequate `notice of the required conduct to one who would avoid its penalties,' Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (1951), is not `sufficiently focused to forewarn of both its reach and coverage,' United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and `may trap the innocent by not providing fair warning,' Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28
(1972).
 "`"As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):
 "`"`There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons *Page 1211 
within the scope of the act, or in regard to the applicable tests to ascertain guilt.'
 "`"333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50 [citations omitted]."
 "`McCrary v. State, 429 So.2d 1121, 1123-24
(Ala.Cr.App. 1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983).'
 "McCall v. State, 565 So.2d 1163, 1165
(Ala.Crim.App. 1990).
 "`"`As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' Kolender v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription. See Kolender,
supra; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)."'
 "Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala.Crim.App. 1993), quoting McCorkle v. State, 446 So.2d 684, 685 (Ala.Crim.App. 1983). However,
 "`"`[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"'
 "Sterling v. State, 701 So.2d 71, 73
(Ala.Crim.App. 1997), quoting Culbreath v. State, 667 So.2d 156, 158 (Ala.Crim.App. 1995), abrogated on other grounds by Hayes v. State, 717 So.2d 30
(Ala.Crim.App. 1997), quoting in turn, Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).
 "`"Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced."' Scott Scott, Inc. v. City of Mountain Brook, 844 So.2d 577, 589 (Ala. 2002), quoting City of Birmingham v. Samford, 274 Ala. 367, 372, 149 So.2d 271, 275 (1963). The judicial power to declare a statute void for vagueness `should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.' Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962)."
Vaughn v. State, 880 So.2d 1178, 1194-96 (Ala.Crim.App. 2003).
The mere fact that a statute contains a term that is not specifically defined in the statute or statutory scheme does not automatically render the statute void for vagueness. See, e.g.,Scott v. State, 917 So.2d 159 (Ala.Crim.App. 2005) (holding that § 13A-12-200.11, Ala. Code *Page 1212 
1975, that part of the Alabama Anti-Obscenity Enforcement Act that prohibits the display of genitals, etc., for entertainment purposes, was not void for vagueness, even though the terms "business establishment," "for entertainment purposes," and "allow" were not specifically defined in the Criminal Code);State v. Randall, 669 So.2d 223, 226 (Ala.Crim.App. 1995) (holding that Alabama's stalking law, § 13A-6-90 et seq., Ala. Code 1975, was not void for vagueness, even though the terms "repeatedly" and "series" were not specifically defined in the statute); Musgrove v. State, 519 So.2d 565, 582-83
(Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala. 1986) (holding that the kidnapping statute, § 13A-6-43, Ala. Code 1975, was not void for vagueness, even though the term "terrorize" was not specifically defined in the statute); and Farris v. State, 432 So.2d 538,539-40 (Ala.Crim.App. 1983) (holding that § 13A-7-44, Ala. Code 1975, criminal possession of explosives, was not void for vagueness, even though the term "explosives" was not specifically defined in the statute). As this Court stated in Scott, supra,
 "`It is well accepted that a court, in interpreting a statute, will give words used therein their "`natural, plain, ordinary, and commonly understood meaning.'"' [State v.] Randall, 669 So.2d [223] at 226 [(Ala.Crim.App. 1995)], quoting Ex parte Etowah County Bd. of Educ., 584 So.2d 528, 530 (Ala. 1991).
 "`"Although penal statutes are to be strictly construed, courts are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning."'
 "Musgrove [v. State], 519 So.2d [565] at 582 [(Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala. 1986)], quoting Walker v. State, 428 So.2d 139, 141
(Ala.Crim.App. 1982)."
917 So.2d at 174.
In 2002, the Alabama Attorney General issued an opinion regarding the definition of the term "living accommodation" as used in § 15-20-26(b), Ala. Code 1975.[4] Att'y Gen. Op. No. 02-175 (March 13, 2002). Although an attorney general's opinion is not binding authority, it is persuasive. See, e.g., State v.Corley, 831 So.2d 59 (Ala.Crim.App. 2001). The attorney general wrote, in pertinent part:
 "Neither the [Community Notification] Act nor any other provisions of the Code of Alabama define what constitutes the establishment of `any other living accommodation.' Likewise, Alabama case law is devoid of decisions addressing the meaning of this phrase. This phrase, however, must have some significance, because it is a well-established rule of statutory construction that `every clause in an act must be accorded a field of operation if possible.' Ex parte Jackson, 625 So.2d 425, 428 (Ala. 1992).
 "`Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used . . . [it must be interpreted] to mean exactly what it says.' Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala. 1991). Webster's Dictionary defines `accommodation' in a number of ways, but when such word is used in conjunction with `living,' the best definition that can be ascribed is that it is *Page 1213 
`lodgings' or `room and board.' Webster's New World Dictionary 8 (3d ed. 1991). Significantly, this definition, unlike that statutorily attributed to `residence' in the [Community Notification] Act, does not entail any concept of `domicile.'[5]
Moreover, this definition of `accommodation' does not suggest that an offender must necessarily spend a minimum amount of time at a given location for him to establish `any other living accommodation.' Rather, the plain and ordinary meaning of `any other living accommodation' is simply that it is a place where someone lodges, regardless of the number of days the person remains there."
Att'y Gen.'s Op., No. 02-175, at p. 3. We agree.
"Living" is defined, in relevant part, as "suited for living" such as "the [living] area." Merriam-Webster's CollegiateDictionary 728 (11th ed. 2003). Black's Law Dictionary 16 (8th ed. 2004), defines "accommodation," in part, as "[a] convenience supplied by someone; esp., lodging and food." Merriam-Webster'sCollegiate Dictionary 8 (11th ed. 2003), defines "accommodation," in part, as "something supplied for convenience or to satisfy a need [such as] lodging, food, and services or traveling space and related services — usu[ally] used in [the plural]" such as "tourist [accommodation]s on the boat" or "overnight [accommodation]s." "Lodging" is defined inMerriam-Webster's Collegiate Dictionary 731 (11th ed. 2003), as "a place to live," "sleeping accommodations," "a temporary place to stay," and "a room in the house of another used as a residence."
When the ordinary and commonly understood meaning of the terms "living" and "accommodation" are combined and applied to §15-20-26(c) and when that statute is read in context with other provisions of the Community Notification Act, especially the provision explaining the purpose behind the Act, see §15-20-20.1, it is clear that "living accommodation" means any overnight lodging, either temporary or permanent. Section15-20-26(c) is sufficiently definitive in its language that ordinary people can understand what conduct is prohibited. Therefore, § 15-20-26(c) is not unconstitutionally vague, and the trial court properly denied Sellers's motion to declare it so.
 II.
Sellers contends that the trial court erred in denying his motion to dismiss the indictment because, he says, the indictment failed to allege an essential element of the offense. Specifically, he argues that the indictment failed to allege that he had established a residence or other living accommodation "where a minor resides," which he claims is an essential element of the offense under § 15-20-26(c), but instead alleged that he had established a residence or other living accommodation "with a minor," which he claims is not synonymous with "where a minor resides," and that the trial court erred in allowing the State to amend the *Page 1214 
indictment to comply with the statutory language.
At the hearing on Sellers's motion to dismiss, the State, after initially arguing that the indictment was valid, moved to amend the indictment by replacing the phrase "with a minor not related by blood or marriage" contained in the indictment with the phrase "where a minor not related by blood or marriage resided." (R. 14.) Over Sellers's objection, the trial court granted the State's motion and amended the indictment.
Rule 13.5(a), Ala.R.Crim.P., provides, in pertinent part, that "[t]he court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced." This Court has held that it is proper for a trial court to amend an indictment to add an essential element of an offense that has been omitted from an indictment so long as the indictment otherwise charges an offense. See Hampton v. State, 815 So.2d 571 (Ala.Crim.App. 2001) (holding that an indictment charging a violation of §13A-11-200, Ala. Code 1975, that failed to charge that the defendant acted willfully or knowingly, which § 13A-11-203
specifically designated as an essential element of an offense under § 13A-11-200, but which otherwise validly charged the offense defined by § 13A-11-200, was properly amended to add the statutory mens rea element). See also Carruth v. State,927 So.2d 866 (Ala.Crim.App. 2005) (holding that an indictment that fails to charge a mens rea element but otherwise validly charges a crime may be amended to add the mens rea element).
Other than the omission of the phrase "where a minor resides," the indictment in this case charged an offense under §15-20-26(c); thus, the amendment to the indictment did not charge a new or different offense. In addition, the record indicates that Sellers was fully aware of the nature of the charge against him and nothing in the record indicates that Sellers's substantial rights were prejudiced by the amendment. Indeed, Sellers did not argue to the trial court, nor does he argue on appeal, that he was prejudiced in any way by the amendment. Therefore, the amendment to the indictment was proper under Rule 13.5.
Accordingly, the trial court properly denied Sellers's motion to dismiss the indictment.
 III.
Sellers also contends that the factual basis was insufficient to support his plea of guilty. Specifically, he argues that the trial court's interpretation of the term "living accommodation" based on the attorney general's 2002 opinion, was too broad and that "living accommodation" must be interpreted to mean "a permanent change of living conditions" and not merely an overnight stay. (Sellers's brief at p. 15.) If the term "living accommodation" is construed as a permanent living arrangement, Sellers concludes, the prosecutor's stated factual basis for the plea as well as the stipulation of facts by the parties was not sufficient to establish that he violated § 15-20-26(c).
 "Rule 14.4(b), Ala.R.Crim.P., provides that `[n]otwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without being satisfied that there is a factual basis for the plea.' `The purpose of requiring the trial judge to determine that there is a factual basis for the plea "is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense."' Alderman v. State, 615 So.2d 640, 647 (Ala.Crim.App. *Page 1215 
1992), quoting United States v. Keiswetter, 860 F.2d 992, 995 (10th Cir. 1988), remand order withdrawn and plea vacated on rehearing, 866 F.2d 1301 (10th Cir. 1989) (en banc). `"The only factual basis required for a guilty plea is that which will satisfy the court that the appellant knows what he is pleading guilty to."' Alderman, 615 So.2d at 647, quoting Garner v. State, 455 So.2d 939, 940
(Ala.Crim.App. 1984)."
Scott, 917 So.2d at 165.
Based on our review of the record, it is clear that Sellers was aware of the nature and elements of the offense to which he was pleading guilty. Before he entered his plea, an extensive hearing was held on Sellers's motions to dismiss the indictment and to have the statute declared unconstitutional, during which the facts of the case, as well as the definition of the term "living accommodation," were discussed. As part of the plea agreement, the parties entered into a stipulation of facts and the prosecutor stated a factual basis for the plea during the guilty-plea colloquy. The facts as stipulated to by the parties indicate that Sellers allowed a minor to stay at his residence for several consecutive days and nights. Although Sellers argues that the trial court incorrectly interpreted the term "living accommodation," as we held in Part I of this opinion the ordinary and common meaning of the term "living accommodation" is any overnight lodging, either temporary or permanent, and the trial court properly used this definition. Thus, there was a sufficient factual basis for Sellers's guilty plea.
Sellers also contends in his brief on appeal that the factual basis was insufficient to establish that he had established a residence or other living accommodation "where a minor resides," which, he says, should be construed to mean the permanent residence of the minor. According to Sellers, because the minor was only temporarily staying at his residence and he did not move into the minor's residence, the factual basis was not sufficient to establish that he had violated § 15-20-26(c). However, Sellers did not present this specific argument to the trial court. Although Sellers challenged the factual basis for his plea in the trial court, he did so solely on the ground that the trial court's interpretation of the term "living accommodation" was incorrect. Indeed, when asked during the guilty-plea colloquy whether the prosecutor's stated factual basis for the plea would be sufficient to sustain a conviction for violating §15-20-26(c), Sellers's counsel conceded that it would be sufficient "subject to the statute being constitutional" and "give[n] the Attorney General's definition of living accommodations." (R. 11.) "Review on appeal is limited to review of questions properly and timely raised at trial." Newsome v.State, 570 So.2d 703, 716 (Ala.Crim.App. 1989). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880,882 (Ala. 1987). Therefore, because this issue was never presented to the trial court, it is not properly before this Court for review.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Section 15-20-26(c) contains additional provisions with respect to situations where the adult sex offender is the minor's parent, grandparent, or stepparent. However, none of those provisions are applicable in this case.
[2] The Community Notification Act was amended effective October 1, 2005; that amendment, among other things, redesignated what was subsection (f) as subsection (h).
[3] Although the copy of the stipulation contained in the record is not signed by the State, the State acknowledges in its brief that the stipulation was jointly made.
[4] That section contains identical language to the language in § 15-20-26(c); it provides that "[u]nless otherwise exempted by law, no adult criminal sex offender shall establish a residence or any other living accommodation within 1,000 feet of the property on which any of his or her former victims, or the victims' immediate family members reside." (Emphasis added.)
[5] Section 15-20-23(b), Ala. Code 1975, provides, in pertinent part:
 "(b) Notwithstanding other provisions of law regarding establishment of residence, an adult criminal sex offender shall be deemed to have established a new residence in any of the following circumstances:
 "(1) Whenever that adult criminal sex offender is domiciled for three consecutive days or more.
 "(2) Whenever that adult criminal sex offender is domiciled following his or her release, regardless of whether that criminal sex offender has been domiciled at the same location prior to the time of conviction." *Page 1216