WELCH, Judge.
Pursuant to a negotiated plea agreement, James Torriano Cosby entered a guilty plea to possession of a controlled substance, cocaine and/or Xanax, a violation of § 13A-12-212, Ala.Code 1975.[1] The Madison Circuit Court sentenced Cosby to 30 months’ imprisonment. The sentence was suspended, and Cosby was placed on 24 months’ supervised probation.[2]
Cosby filed a motion to suppress evidence and statements obtained by police following what Cosby asserted was an unlawful warrantless entry and search of his house and search of his person. According to Cosby, there was no probable cause coupled with exigent circumstances to justify the action taken by police. Following ■ the denial of his motion to suppress, but before entering his guilty plea, Cosby reserved the right to appeal the trial court’s denial of the motion to suppress. See Mitchell v. State, 913 So.2d 501 (Ala.Crim.App.2005)(explaining the necessity of preserving and reserving an alleged error before the entry of a guilty plea).
The following testimony was presented at the hearing on the motion to suppress. Officer Tyler Benson, a patrol officer with the Huntsville Police Department (“HPD”) testified that on March 17, -2012, he and HPD Officers Jeffery Burke, and Johnson,[3] were dispatched to 2213 Hill Street .to investigate an anonymous caller’s report that the occupants of the house at that address were using and growing illegal drugs and that a child was present in the residence. In response to the dispatch, the three officers went to the address to check on the welfare of the child. • Other officers arrived to assist. Pursuant to what Officer Benson'-said was his training and HPD protocol when investigating the welfare of a child, the officers split up to surround the perimeter of the house. According to Officer Benson, the purpose of surrounding the house was to gain as many vantage points as possible to see what is happening inside the house in order to make sure the child is not in danger. Officers Burke and Johnson went to the front door and Officer Benson entered the backyard through what he recollected, but was not positive, was the open gate of the chain-link fence surrounding the backyard.- At the time of his entry into the backyard, the sun was beginning to set and lights were on inside the house. From his vantage point, Officer Benson could see through a glass storm door into the kitchen where he could see Cosby and Cosby’s wife.[4] Cosby was at the kitchen table holding a pistol in his right hand. Officer Benson stated that Cosby had no criminal history that would- prevent his legally possessing a pistol inside his house. Cosby held in his left hand a green plastic sand *528 wich bag containing a green leafy substance that Officer Benson believed, based on his training as a patrol officer, to be marijuana. Cosby.was placing the gun into a- camouflaged bag or backpack. When Cosby’s wife left the kitchen to,answer .the front door, Officer Benson entered the house through the unlocked back door. Initially, Officer Benson stated that he entered Cosby’s house because Cosby had a gun, and thus, he was concerned for the safety of the officers at the front door, and also because Officer Benson did not know if Cosby intended to destroy the marijuana. Officer Benson further testified that regardless of those explanations, it was his opinion that exigent circumstances existed to justify a warrantless entrance into the house because it was Officer Benson’s opinion that Cosby was trying to ' conceal the marijuana. What Cosby was doing to conceal the marijuana was not explained. During further defense questioning on this topic,' counsel asked Officer Benson if it was logical to believe that Cosby had the intent to destroy or conceal the marijuana, given that Cosby was inside his own house completely unaware that he was being watched. Officer Benson then stated that he entered the house to make sure that a child was not in danger.[5]
Although Officer Benson testified regarding his belief that exigent circumstances existed to allow a warrantless entry* into Cosby’s house,' he was questioned further about his decision to forgo obtaining a search warrant. Upon additional questioning, Officer Benson first stated that he did not seek a search warrant because he had officers at the front door and he did not know what Cosby’s intentions were and because it was a child-endangerment call. Officer Benson also stated that he entered the house because Cosby was committing a crime, i.e., possession of marijuana, in Benson’s presence, and moreover, Officer Benson stated that he believed that Cosby was trying to hide drugs and that that constituted an exigent circumstance.
Tonia Green, Cosby’s wife, testified that on the evening of March 17, 2012, she lived at 2213 Hill Street with Cosby and their son. She and Cosby were at the kitchen table about to eat a pizza supper when there was a knock at the front door. Cosby called out asking, “Who is it?” The reply was the “HPD.” Green-left the kitchen, opened the front door, stepped out on the porch with officers from the HPD, and closed the front door. Her yard and porch were “full” of officers; (R. 20.) She guessed there were about 20 officers present. She was told that the officers were there to investigate a report concerning the welfare of her child. Green informed the officers that her child was fine. She stated to the court that the child was “in there eating.” (R. 19.) That was the only question the officers asked about her chiid. The next question asked by an officer was who had yelled “Who is it?” when the officers knocked on the door. (R. 19.) She told the officer that that had been her husband, Cosby. An officer told her that they wanted to speak with Cosby. She testified that she said “río problem” and “cracked open the front door about this'big [gesturing], and [she] asked [Cosby] to come to the front door to speak to [the officers]. When [she] went to close the [front] door back, [the officers] pushed the door open and said, ‘No, we’ll just go ahead and speak in here.’ ” (R. 19.) The officers pushed open the door and entered the house passing Green as they walked into the house. Green said that as the *529 officers entered the house, she “turned around and looked for [Cosby], -and [she] noticed that [an officer] had already came through our back door and placed [Cosby] in handcuffs basically a split second or two before [the officers] came past [her] in the front door.” (R. 19.)
Officer Benson was recalled for additional questioning. He said that he had conducted child-welfare checks before and that he was usually accompanied by one officer. He stated there were as many as seven officers and one investigator assisting the instant welfare check. Officer Benson said that he entered the house through the unlocked back door, handcuffed Cosby, and then radioed the officers at the front door that “[he] had one detained.” (R. 24.) The officers at the front door entered “seconds or moments after” that. (R. 25.)
The trial court questioned Officer Benson. Benson told the trial court that from the time he lost sight of the two officers, Officers Burke and Johnson, going to the front door until the time he entered the back door, only 5 to 10. seconds elapsed.
“Q [The Court]. , How much time elapsed between when you lost sight of your two cohorts there and went around to the back and ultimately detained the Defendant? Roughly, how much time are you talking?
“A [Officer Benson]. Seconds; I would say anywhere from 5 to 10 seconds.”
(R. 28.)
At the conclusion of the testimony, the trial court denied the motion to suppress, stating:
“THE COURT: I think if it was just the pot, [Cosby] would have a much better argument. But I think with the officer’s safety being a concern, the fact that he observed [Cosby] with a handgun in his possession, not knowing what he, potentially, was going to do and potentially endanger the other officers coming in the front-door, I think it’s enough although, admittedly, it’s a closer call. But the existence of the handgun, to me, is sufficient for it to rise to the level of being exigent circumstances, particularly with concerns about officer safety, so I’ll deny your motion.”
(R. 29-30.)
“This Court reviews de novo a circuit court’s decision on a motion to suppress ■ evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). In the instant case, the facts are uncontested; the only issue is the circuit court’s application of the law to those facts. Therefore, this Court affords no presumption in favor of the circuit court’s ruling.
L
Cosby argues on appeal that the anonymous tip did not create probable cause for Officer Benson’s warrantless entry into Cosby’s fenced backyard. The record does not disclose that Cosby presented the trial court with a specific argument concerning the , anonymous tip. Therefore, that contention will not be addressed. ■ See Sellers v. State, 935 So.2d 1207, 1215 (Ala.Crim.App.2005) (“‘The statement of specific grounds of an objection waives all.grounds not specified, and the trial court will not be put in error on grounds not assigned at-trial.’”)(quoting Em parte Frith, 526 So.2d 880, 882 (Ala.1987)); Barron v. State, 682 So.2d 505 (Ala.Crim.App.1996) (a claim that the appellant’s conviction was obtained thrpugh the use of evidence gained by an illegal search, and- seizure is 'nonjurisdictional in nature).
*530 II.
Cosby argues on appeal that Officer Benson’s warrantless entry into Cosby’s house did not follow from observations made by Officer Benson from Cosby’s backyard. It was Officer Benson’s assertion that he legally entered the backyard without a warrant based on his belief that, when investigating accusations concerning the welfare of a child, it was police-department protocol to surround the perimeter of the child’s residence to gain views of the inside of the residence to see if the child is in danger. Although Cosby vigorously cross-examined Officer Benson regarding HPD standard operating procedures, protocol, and training, the record does not disclose that Cosby presented the trial court with a specific argument concerning HPD protocol. Therefore, that contention will not be addressed. See Sellers v. State, 935 So.2d 1207, 1215 (Ala.Crim.App.2005) (“ ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ ”)(quoting Ex parte Frith, 526 So.2d 880, 882 (Ala.1987)).
III.
Cosby contends that, contrary to the State’s argument at the hearing and the findings of the trial court, Officer Benson’s belief that narcotics were insidé the house, without more, was not an exigent circumstance, nor did the observation of a pistol inside the house create an exigent circumstance allowing a warrantless entry into Cosby’s house. Cosby preserved his claim that exigent circumstances did not exist when he argued to the trial court that the police “had plenty of time and plenty of opportunity to seek a magistrate to try to get a warrant to be able to enter into Mr. Cosby’s house.” (R. 4.) Moreover, it is clear from the trial court’s comments that the trjal court understood that the lack of exigent circumstances was a basis for the motion to suppress. See generally Toles v. State, 854 So.2d 1171, 1174 (Ala.Crim.App.2002); Covington v. State, 620 So.2d 122, 127 (Ala.Crim.App.1993); Ex parte Webb, 586 So.2d 954, 956 (Ala.1991); Ex parte McCall, 594 So.2d 628, 631 (Ala.1991); Ex parte Pettway, 594 So.2d 1196, 1200 (Ala.1991); Felder v. State, 593 So.2d 121, 122-23 (Ala.Crim.App.1991); and Marshall v. State, 570 So.2d 832, 834 (Ala.Crim.App.1990).
The sight of Cosby inside his house with what was alleged to be a sandwich bag containing marijuana, without more, was not an exigent circumstance allowing entry into Cosby’s house without a warrant.
“ ‘[T]he mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant.’ People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100, 102-103 (1981), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 798 (1983). See also People v. Ouellette, 78 Ill.2d 511, 36 Ill.Dec. 666, 669-70, 401 N.E.2d 507, 510-11 (1979). ‘The presence of contraband without more does not give rise to exigent circumstances.’ United States v. Torres, 705 F.2d 1287, 1297 (11th Cir.1983).”
Williams v. State, 995 So.2d 915, 918-19 (Ala.Crim.App.2008). The presence of a pistol, when added to the presence of what the officers thought was marijuana, did not create an exigent circumstance.
“The exigent-circumstances doctrine ‘applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.’ Missouri v. McNeely, — U.S. -, -, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) *531 (quoting Kentucky v. King, 563 U.S. [452], [460], 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011)).
“Furthermore,
“‘[T]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. United States v. Satterfield, 743 F.2d [827, 844 (11th Cir.1984) ].

a i

“ ‘The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructibility of the contraband and the knowledge “that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.” ’
“Cameron v. State, 861 So.2d 1145, 1151-52 (Ala.Crim.App.2003).”
Benson v. State, 160 So.3d 55, 60 (Ala.Crim.App.2014).
None of the above factors were established. There was no credible evidence suggesting that the marijuana was about to be moved or destroyed before or after Officers Burke and Johnson announced their presence at the front door. The only testimony concerning Cosby’s immediate conduct was that he was in the kitchen about to have his dinner; there was no evidence of conduct that suggested that Cosby was about to hide or to destroy the alleged drugs or to leave his house.
There was no evidence indicating that the police or the child subject of the welfare check would be in danger if the police waited on a search warrant. According to the testimony, Officers Burke and Johnson did not know when they knocked on the front door who was in the house or that Officer Benson had seen Cosby with a gun and marijuana. Officer Benson saw Cosby with a gun, and he believed that the gun made it necessary to enter the house and to subdue Cosby to protect Officers Burke and Johnson from potential harm. However, the record discloses that, although Officers Burke and Johnson’s intentions may have been unknown to Cosby, Cosby had placed the pistol in a backpack, and his reaction to the officers at. the front door was to remain in the kitchen and allow Green to converse with the officers. The record also discloses that Cosby was within Officer Benson’s sight while Officers Burke and Johnson were on the front porch with Green. It is important to note that Officers Burke and Johnson were justified only in knocking on the front door to hopefully initiate contact and a conversation with an occupant of the house to whom they could inquire about the welfare of a child. There was no indication that concerns about the welfare of a child provided any reason for Officers Burke and Johnson to enter the house and encounter Cosby. Thus, although Cosby had a pistol inside his house, the State did not present any evidence to indicate that Cosby was an immediate danger to officers who were knocking on Cosby’s front door as part of the child-welfare check.
Moreover, there was no testimony that a child was in danger inside the house. Any danger posed to the child by exposure to *532 the sandwich bag containing marijuana would not have -been exacerbated by a presumably short delay to obtain a search warrant for illegal drugs. Moreover, entrance into the house pursuant to a warrant based on possession of a controlled substance would have had the additional benefit of allowing for the observation and investigation of the child’s welfare.
Therefore, although there might have been enough evidence to give officers probable cause for a search warrant based on the possession of marijuana, neither the observation of the pistol nor, the sandwich bag of marijuana, separately or together, was sufficient evidence of exigent circumstances to justify a warrantless entry of Cosby’s house.
Based on this Court’s review of the evidence presented at thé suppression hearing, this Court concludes that the trial court’s denial of Cosby’s motion to suppress- evidence- seized as a result of the March 17, 2012, warrantless entry of Cosby’s house was contrary to the evidence and, thus, error. Accordingly, Cosby’s guilty-plea conviction for possession of a controlled substance is reversed and this ease is remanded to the circuit court for proceedings consistent with this opinion.
' REVERSED AND REMANDED.
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Count 2 of the two-count indictment charged Cosby with possession of marijuana for other than personal use, a violation of § 13A-12-213, Ala.Code 1975. This count was nolle prossed as part of the plea agreement with the State.

. The court ordered Cosby to pay a $1,000 fine, $100 to the crime victims compensation fund, $1,000 user-fee penalty, $100 fee to the department of forensic sciences, court costs, and attorney fees.

. Officer Johnson’s first name is not reflected in the record.

. Officer Benson stated that he estimated that his distance from Cosby was the same as the distance from the witness box to a table in the courtroom. The distance was not explained in any more detail.

. Officer Benson stated that he did not see a child. Officer Benson testified that at the time he entered the house, it was unknown if a child was in danger.